## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | **EP-21-CV-00111-DCG** |
| **$12,107.00, MORE OR LESS, IN** | § | |
| **UNITED STATES CURRENCY,** | § | |
| | § | |
| *Respondent.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the United States' "Motion for Default Judgment of Forfeiture and Memorandum of Law in Support Thereof" ("Motion") (ECF No. 9).  In its Motion, the Government moves the Court to enter default judgment against any and all right, title, and interest of Josiah Ruiz, Danny Rucker, and any and all other potential claimants, that were served by publication, in the named $12,107.00, more or less, in U.S. Currency ("Respondent Property").  Mot. at 1.  No person filed a claim to the Respondent Property.  And no person filed an answer to the Government's Verified Complaint.  After due consideration, the Court GRANTS the Government's Motion and enters default judgment.

## I.    BACKGROUND

The Government argues that the Respondent Property is subject to forfeiture because there is a nexus between it and violations of the Controlled Substances Act; specifically, 21 U.S.C. §§ 841(a)(1) and 846.[1]  Mot. at 5.  In other words, the Government argues that the

---

[1] 21 U.S.C. § 841(a)(1) provides that, "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Respondent Property was derived from proceeds traceable to unlawful exchanges for controlled substances.  Compl. at 5.  Consequently, the Government contends forfeiture is proper under 21 U.S.C. § 881(a)(6), which provides that "moneys . . . furnished or intended to be furnished . . . in exchange for a controlled substance . . . [and] all proceeds traceable to such an exchange" "shall be subject to forfeiture to the United States."  Mot. at 5.

### A.  Factual Background

In support of its Motion, the Government describes the underlying facts in an affidavit by United States Postal Inspector Juan Solis.[2]  Compl. Ex. A.  The government's seizure of the Respondent Property arose from law enforcement efforts by the El Paso County Sheriff's Office (EPCSO) and the United States Postal Inspection Service (USPIS).

EPCSO started the relevant investigation.  The Government asserts that, prior to engaging with USPIS, EPCSO identified Josiah Ruiz "as a seller of narcotics."  *Id.* at 3.  EPCSO conducted a search of Ruiz's home, found illegal drugs, and observed Ruiz "conducting narcotic related transactions at his residence" on two separate occasions.  *Id.*  At some point, EPCSO also discovered communications between Ruiz and an individual named Danny Rucker, who lives in California.  *Id.*

In December 2020, EPCSO informed USPIS that Ruiz may be involved with narcotics trafficking via the United States Postal Service.  *Id.*  Upon searching postal records, USPIS discovered records of four parcels that had been delivered between Ruiz and Rucker.  *Id.*

Later, during a routine postal inspection, on January 26, 2021, USPIS flagged a Priority Mail Express parcel addressed to Rucker, with a return address for Ruiz.  *Id.*  The next day, a drug dog reviewed the parcel and "indicated a positive alert to the presence of narcotics."  *Id.*

---

[2] The facts described in this Memorandum Opinion and Order are presented as the Government alleges them.

With that information, law enforcement obtained a federal search and seizure warrant for the parcel. *Id.* USPIS searched the parcel and discovered the Respondent Property. *Id.*

USPIS Inspector Solis asserts that the way the Respondent Property was packaged is consistent with previously identified drug trafficking proceeds. The Respondent Property "was wrapped in aluminum foil, bundled with rubber bands, and secreted within a residential lock set box. The lock set box was surrounded by packaging peanuts and two bags of potato chips." *Id.* at 4. Additionally, the parcel contained no "notes, letters, receipts, cards, or coupons," which, Solis explains, are typically included with "[l]egitimate business or personal gifts." *Id.*

Soon after discovering the Respondent Property, USPIS discovered another suspect parcel. *Id.* This parcel was marked with a California return address (Rucker's known home state) and was addressed to a "Noah Hernandez," which law enforcement had previously identified as a pseudonym used by Ruiz. *Id.* The address listed for "Noah Hernandez" also matched the address under Ruiz's name on the parcel containing the Respondent Property. *Id.*

Again, a drug dog "positively alerted to the presence of a controlled substance." *Id.* Once USPIS obtained a warrant and executed a search, "approximately 202 grams of THC products were discovered." *Id.* After a controlled delivery of the parcel, on February 8, 2021, law enforcement arrested Ruiz. *Id.* Based on all of this information,[3] the Government asserts that there is a nexus between the Respondent Property and violations of 21 U.S.C. §§ 841(a)(1) and 846. Mot. at 5.

---

[3] The Government alleges that USPIS discovered a third suspect parcel. That parcel contained "approximately 240 grams of marijuana and THC products." *Id.* at 4. The parcel was addressed to a "Danny Rodriguiz". *Id.* at 5. The Government does not assert whether law enforcement knew this name to be a pseudonym used by Ruiz, but the address provided for "Danny Rodriguiz" matched that provided for Ruiz on the other two parcels. *Id.* The Government was not able to conduct a controlled delivery of this parcel. *Id.*

### B.  Procedural Background

On May 18, 2021, the Government initiated the instant action when it filed its Verified Complaint for Forfeiture.  ECF No. 1.  The Court issued an "Order for Warrant of Arrest of Property" (ECF No. 2) on May 26, 2021.  And, the next day, the District Clerk issued the Warrant.  ECF No. 3.

The Government filed a "Process Receipt and Return," indicating that the United States Marshals Service personally served Ruiz with a copy of the Verified Complaint on August 26, 2021.  ECF No. 4.  The Government served Rucker via USPS Certified Mail.  Compl. Ex. A. Additionally, the Government published a Notice of Civil Forfeiture on an official government website (www.forfeiture.gov) for 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture ("Supplemental Rule G").  ECF No. 6.

Nobody filed a claim for the property, as permitted by the statute governing rules for civil forfeiture proceedings.  18 U.S.C. § 983(a)(4)(A) ("In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest[.]").  The Government moved for entry of default on December 2, 2021, and the District Clerk entered default the same day.  ECF Nos. 7 and 8.  The Government subsequently filed the present Motion for Default Judgment.  ECF No. 9.

## II.    DISCUSSION

### A.  Jurisdiction

Because this action is brought by the United States for the civil forfeiture of property, the Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a).  28 U.S.C. § 1345 ("[D]istrict courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the

United States."); 28 U.S.C. § 1355(a) ("[D]istrict courts shall have original jurisdiction . . . of

any action or proceeding for . . . forfeiture . . . incurred under any Act of Congress."). The Court

has *in rem* jurisdiction over the Respondent Property under 28 U.S.C. § 1355(b) and 1395.

### B. Standard

Federal Rule of Civil Procedure 55 ("Rule 55") governs entry of default and default

judgment.  It's helpful to discuss the terms and process under Rule 55.  "A *default* occurs when a

defendant has failed to plead or otherwise respond to the complaint within the time required by

the Federal Rules."  *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  Next comes

an *entry of default*, which the clerk enters "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise."  Fed. R. Civ. P. 55(a); *Brown*, 84 F.3d at 141.  Once the clerk has entered

a defendant's default, a "plaintiff may apply for a judgment based on such default.  This is a

*[motion for] default judgment*."  *Brown*, 84 F.3d at 141.  At that point, a court, with certain

exceptions, may enter default judgment.  Fed. R. Civ. P. 55(b)(2).

Default judgments are not the norm.  They "are a drastic remedy, not favored by the

Federal Rules and resorted to by courts only in extreme situations."  *Sun Bank of Ocala v.*

*Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted).  But

the procedure exists because "an essentially unresponsive party" can halt the adversary process.

*Id.* (quotation omitted).  Even so, "a 'party is not entitled to a default judgment as a matter of

right, even where the defendant is technically in default.'"  *Lewis v. Lynn*, 236 F.3d 766, 767 (5th

Cir. 2001) (per curiam) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

Before a court enters default judgment, it must be satisfied that it is procedurally proper

and that there is "a sufficient basis in the pleadings for the judgment [to be] entered."

*Nishimatsu Constr. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); Fed. R.

Civ. P. 55(b).  Stated differently, "the Court must determine: (1) whether default judgment is procedurally warranted; (2) whether the Government's Complaint sufficiently sets forth facts establishing that it is entitled to relief; and (3) what form of relief, if any, the Government should receive."  *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)).

### C.  Analysis

Based on the following analysis, the Court concludes that default judgment is procedurally warranted; the Government has sufficiently set forth facts establishing that it is entitled to relief; and that the appropriate relief is forfeiture to the United States of the Respondent Property.

### *1.  Procedural Requirements Necessary for Default Judgment*

Default judgment is procedurally warranted if the clerk's entry of default was proper under Rule 55(a).  *1998 Freightliner*, 548 F. Supp. 2d at 384–85.  Entry of default is proper when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).

To plead or defend in a civil forfeiture action, a claimant must do two things: (1) file a claim for the property and (2) "serve and file an answer to the complaint or a motion under Rule 12."  Supplemental Rule G(5)(a)(i) and G(5)(b).  Any person who receives direct notice of the action has 35 days to file a claim.  Supplemental Rule G(4)(b)(ii)(B).  Any person receiving notice by publication has "60 days after the first day of publication on an official internet government forfeiture site" to file a claim.  Supplemental Rule G(5)(a)(ii)(B).  And any person

who files a claim "must serve and file an answer to the complaint or a motion under Rule 12 within 20 days after filing the claim."  Supplemental Rule G(5)(b).

There is none of this will happen unless potential claimants have notice of the civil forfeiture action.  That means proper notice is the threshold procedural requirement for a default judgment.  *See United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1114 (5th Cir. 1992).  So the Court must look to whether the Government provided potential claimants proper notice of this civil forfeiture action.

There are two known potential claimants in this case: Ruiz and Rucker.  Ruiz sent the Respondent Property and addressed it to Rucker.  Compl. Ex. A at 3.  That alone makes them known potential claimants.

The Government provided direct notice to both of them.[4]  ECF No. 4 and Compl. Ex. A.  And in accordance with Supplemental Rule G, the Government also posted notice for 30 days on an official government website.  ECF No. 6.  The Government thus provided proper notice to potential claimants.  Supplemental Rule G(4)(b) ("The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government.") and Supplemental Rule G(4)(a)(iv)(C) (permitting notice by publication "on an official internet government forfeiture site for at least 30 consecutive days").

Because neither Ruiz, Rucker, or any other potential claimant filed a claim or answer, they failed to plead or otherwise defend in this action.  *See United States v. $23,000 in U.S.*

---

[4] Some form of direct service to known potential claimants is required by 18 U.S.C. § 983(a)(1)(A) and Rule G(4)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, which states, "The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under [these Rules]."

*Currency*, 356 F.3d 157, 163 (1st Cir. 2004); *United States v. Real Prop. and Appurtenances Located at 11412 Philip Drive, Socorro, Tex. 79927, with All Improvements & Attachments Thereon*, No. EP-18-CV-00094-FM, 2019 WL 13080566, at *3 (W.D. Tex. Feb. 19, 2019) (deciding same where no claim or answer were filed).  That is, they defaulted.  Based on the foregoing, the procedural requirements necessary for default judgment are met.

### 2. *Sufficiency of the Government's Verified Complaint*

Prior to entry of default judgment, the Court must determine whether the plaintiff has shown "a sufficient basis in the pleadings for [] judgment to be entered."  *Nishimatsu*, 515 F.2d at 1206.  This standard is akin to the pleading requirements under Federal Rule of Civil Procedure 8.  *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).  That means "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015).  Thus, "a court looks to see whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Surtain*, 789 F.3d at 1245 (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up); *Wooten*, 788 F.3d at 498–500.

The question is, in a civil forfeiture action under 21 U.S.C. § 881(a)(6), like the one here, what substance must the government allege to show that it has stated a claim for relief?  In other words, what elements must be satisfied?

When the Government argues that the respondent property "was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," as it does here, then the Government bears the burden of proving, "by a preponderance

of the evidence," "that there was a substantial connection between the property and the offense."[5] 18 U.S.C. § 983(c).  Simply stated, the Government's burden is to prove, by a preponderance of the evidence, a substantial connection between the property and the alleged offense.  *Id.*

So the exact elements the Government has to satisfy will depend on the alleged offense. The statute authorizing forfeiture for violations of the Controlled Substances Act provides greater detail about what the Government must prove the respondent property is substantially connected to.  *See generally* 21 U.S.C. § 881.  Here, the Government contends that forfeiture of the Respondent Property is appropriate under 21 U.S.C. § 881(a)(6), which prescribes:

> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> ***
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

Combining section 881(a)(6) with 18 U.S.C. § 983(c), the government must prove, by a preponderance of the evidence, that the respondent property has a substantial connection to an "exchange for a controlled substance or listed chemical in violation of [21 U.S.C. Subchapter I]." 18 U.S.C. § 983(c); 21 U.S.C. § 881(a)(6); *see also United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508–09 (5th Cir. 2008).  That describes the ultimate burden.

---

[5] The Government implies in its Motion that the standard is "a nexus" between the property and violations of the Controlled Substances Act.  Mot. at 5.  Whether described as (the apparently interchangeable terms) "nexus" or "connection," it's clear that the standard requires the government to show a *substantial* connection (or nexus) between the property and violation(s) of the Controlled Substances Act.  *United States v. One 1986 Nissan Maxima GL*, 895 F.2d 1063, 1064 (5th Cir. 1990) (government must show "a substantial connection exists between the property to be forfeited and a crime under Title 21 of the United States Code"); *United States v. $321,470.00, U.S. Currency*, 874 F.2d 298, 304 (5th Cir. 1989) (government must show "a substantial nexus between the property seized and drug trafficking").

But the ultimate burden of proof—preponderance of the evidence—does not apply in the default judgment context. *See Wooten*, 788 F.3d at 498–500; *Nishimatsu*, 515 F.2d at 1206. *But see United States v. $37,603.00 in U.S. Currency*, No. 4:20-cv-00222, 2021 WL 3013337 (S.D. Tex. Jul. 16, 2021) (applying preponderance of evidence standard). Rather, in the default judgment context, the government must proffer "sufficient factual matter [that], accepted as true," *Surtain*, 789 F.3d at 1245, demonstrates a substantial connection between the respondent property and an exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, *e.g.*, *$92,203.00*, 537 F.3d at 508–09; *One 1986 Nissan Maxima GL*, 895 F.2d at 1064; *$321,470.00*, 874 F2d at 304.[6]

Here, the Government has met its burden. Alleged facts show a substantial connection between the Respondent Property and an exchange for controlled substances or listed chemicals in violation of 21 U.S.C. §§ 841(a)(1) and 846. This finding is based on the facts described in Section I.A., *supra*, and as summarized below.

The government's seizure of the Respondent Property occurred against the background of an investigation that connected Ruiz and Rucker to drug trafficking. EPCSO discovered cellphone communications between Ruiz and Rucker. Compl. Ex. A at 3. Using those, EPCSO apparently concluded that Ruiz and Rucker may have been engaging in drug trafficking via the United States Postal Service. *Id.* And USPIS identified records of four parcels mailed between Ruiz and Rucker that provided further cause for the government to draw its conclusions. *Id.*

---

[6] The evidentiary burden of proof discussed in *One 1986 Nissan Maxima GL* and *$321,470.00* (which was probable cause) no longer applies. In 2000, Congress enacted the Civil Asset Forfeiture Reform Act (CAFRA) and mandated that the government meet the preponderance of the evidence standard in civil forfeiture actions. *$92,203.00*, 537 F.3d at 508–09. But *One 1986 Nissan Maxima GL* and *$321,470.00* support the existence of the burden of proving a "substantial connection". 895 F.2d at 1064; 874 F2d at 304.

After flagging a parcel that was shipped between Ruiz and Rucker, USPIS obtained a search warrant, searched the parcel, and found the Respondent Property. *Id.* The Respondent Property was allegedly packaged in a manner consistent with drug trafficking, *id.* at 4, which is evidence of a substantial connection between the Respondent Property and violations of the Controlled Substances Act, *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006) ("currency was concealed in aluminum foil inside a cooler"); *United States v. $19,960.00 in U.S. Currency*, No. CV 11-02394 MMM (PLAx), 2013 WL 2456800, at *4 (C.D. Cal. Jun. 6, 2013) (noting lack of "notes, receipts, or instructions . . . as there would typically be when money is sent as a gift or part of a business transaction").

USPIS then intercepted another parcel, addressed to Ruiz under a known pseudonym, and coming from California (where Rucker was known to be located). Compl. Ex. A at 4. That parcel contained THC products—a controlled substance. *Id.*; 21 U.S.C. § 812, Schedule 1(c)(17). Law enforcement conducted a controlled delivery of the package containing the controlled substance and arrested Ruiz. Compl. Ex. A at 4.

The Court concludes that the Government has proffered sufficient factual matter that, accepted as true, establishes a substantial connection between the Respondent Property and its exchange for a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846.

### 3.  *The Relief Requested*

Federal Rule of Civil Procedure 54(c) mandates that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "[T]he relief prayed for in a complaint defines the scope of relief available on default judgment." *1998 Freightliner*, 548 F. Supp. 2d at 386.

In its Motion, the Government seeks default and final judgment of forfeiture against the Respondent Property.  That is consistent with the Government's prayer for relief in its Verified Complaint.  Compl. at 2.  Given the uncontroverted evidence presented by the Government, the Court finds that the requested relief is appropriate.

### III.    CONCLUSION

Based on all of the foregoing, the Government has met its burden for default judgment. Accordingly, **IT IS ORDERED** that the United States' "Motion for Default Judgment of Forfeiture and Memorandum of Law in Support Thereof" (ECF No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that a **FINAL DEFAULT JUDGMENT OF FORFEITURE** is **ENTERED** against the Respondent Property.

**IT IS FURTHER ORDERED** that any and all right, title, and interest of Josiah Ruiz and Danny Rucker, or any other potential claimant, who was served by publication, is held in default and **FORFEITED** to the United States.

**IT IS FURTHER ORDERED** that the Respondent Property is **FORFEITED** to the United States.

**IT IS FURTHER ORDERED** that the United States Marshals Service, and/or its designated substitute custodian, shall dispose of the Respondent Property in accordance with law.

**IT IS FURTHER ORDERED** that any and all costs and expenses regarding the seizure and forfeiture process of the Respondent Property be reimbursed to the United States Marshals Service, and/or their designated substitute custodian, from the Respondent Property.

**IT IS FURTHER ORDERED** that the above-captioned case is **DISMISSED**.

**IT IS FURTHER ORDERED** that all pending motions, if there are any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the District Clerk shall **CLOSE** this case.

**So ORDERED and SIGNED this 6th day of April 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**